(No. 48220.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. STEPHAN HEDDINS, Appellee.

*Opinion filed April 5, 1977.—Rehearing denied May 26, 1977.*

DOOLEY, J., specially concurring.

Martin Rudman, State's Attorney, of Joliet, for the People.

Cirricione, Block & Krockey, of Joliet (V. James Cerri, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In a complaint filed in the circuit court of Will County, defendant, Stephan Heddins, was charged with armed robbery. As the result of plea bargaining, it was agreed that he would waive indictment, preliminary hearing and presentence report and plead guilty to robbery. The People agreed to dismiss the armed robbery charge and recommend a sentence of 2 to 10 years.

Upon being advised of the plea bargain, the circuit court stated that without receiving a presentence report, it would not be bound by the terms of the agreement. The People, taking the position that the offer "was conditioned on the court concurring in all of the terms of said agreement," terminated negotiations. Defendant was indicted for armed robbery and thereafter moved to dismiss the indictment. The circuit court then held that, by earlier insisting that the plea agreement be accepted without the presentence report, the People were attempting to encroach upon the court's sentencing powers, and dismissed the indictment. The order of dismissal provided:

"The defendant's motion to dismiss the Indictment is granted and the Indictment is dismissed. The defendant is

ordered to be held to his original obligation and bond in this cause pending further proceedings in this cause and until such time as either an appeal is taken or other proceedings. Defendant's bond is to stand as previously set in the sum of $15,000.00 with the 10% deposit having been made. People have 30 days in which to file a notice of appeal."

The People appealed and the cause is here on direct appeal. Rule 302(b).

The parties have briefed and argued several issues, none of which need be reached. Supreme Court Rule 604 provides:

"(a) * * *

(1) *When State May Appeal.* In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence.

* * *

(3) *Release of Defendant Pending Appeal.* A defendant shall not be held in jail or to bail during the pendency of an appeal by the State, or of a petition or appeal by the State under Rule 315(a), unless there are compelling reasons for his continued detention or being held to bail." 58 Ill. 2d R. 604.

It is obvious that the order from which the People seek to appeal does not fall within the ambit of Rule 604(a). It is equally obvious that the order which held defendant to bail and comtemplated "further proceedings in this cause" did not effect the dismissal of the charge. The order clearly lacks finality, we perceive no basis on which to hold it appealable; and the appeal is therefore dismissed. An order, however, need not be final and appealable in order that this court exercise its supervisory authority. *People v. Breen,* 62 Ill. 2d 323.

The order entered was clearly erroneous. Rule 402(d) governs the taking of negotiated pleas of guilty and does

not authorize the action taken here. Furthermore, unlike the order in *People v. Scholin,* 62 Ill. 2d 372, which would have effected the dismissal of the charge and become final upon the expiration of 5 days, the effect of the order entered here was to place the cause in a state of suspense not provided for in either the Code of Criminal Procedure or the rules of this court. It should be noted that although in *Scholin* we affirmed the appellate court's dismissal of the People's appeal, our failure to enter a supervisory order is not to be interpreted as approval of the order entered by the circuit court in that case. In the exercise of our supervisory authority the circuit court of Will County is directed to vacate its order and reinstate the cause for further proceedings.

*Appeal dismissed; supervisory order entered.*

MR. JUSTICE DOOLEY, specially concurring:

I agree with the result reached by the majority. However, this case makes manifest the necessity for nonjudicial participation in the negotiations inherent in plea bargaining.

Here the trial court was telling the prosecutor what should be the terms of the plea bargain. This was error. The power of a court in plea bargaining is to accept or reject the particular bargain agreed upon by the parties. Rule 402(d) of this court (58 Ill. 2d R. 402(d)) prohibits the trial judge from initiating plea discussions. It further limits the power of the trial judge to indicating "to the parties whether he will concur in the proposed disposition." While Rule 402(d) is not the essence of simplicity, other sources bring into focus the thrust of this rule, namely, that the court shall not fix the terms of the bargain. See Rule 11 of the Federal Rules of Criminal Procedure, which covers almost all contingencies of the function of the court in plea bargaining; Notes of the Advisory Committee on Rules of Criminal Procedure to Rule 11(e)(1); Note, *Judicial Participation in Guilty*

*Pleas—A Search for Standards,* 33 U. Pitt. L. Rev. 151, 156-57 (1971); *cf.* Hoffman, *Plea Bargaining and the Role of the Judge,* 53 F.R.D. 499 (1971). Specifically, Federal Rule of Criminal Procedure 32(c)(1) provides:

> "The [presentence] report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty, except that a judge may, with the written consent of the defendant, inspect a presentence report at any time."

See *United States v. Werker* (2d Cir. 1976), 535 F.2d 198, for Judge Lombard's excellent discussion of this question.

Here the court, after obtaining a presentence report, could conceivably decide that a period of imprisonment longer than 2 to 10 years was proper. Yet if the defendant were aware of this possibility, he might not have agreed to the entry of a plea of guilty—a simultaneous waiver of substantial constitutional rights, including the privilege against compulsory self-incrimination, the right to trial by jury, as well as the right to confront one's accuser. *McCarthy v. United States* (1969), 394 U.S. 459, 466, 22 L. Ed. 2d 418, 425, 89 S. Ct. 1166, 1171.

*United States ex rel. Elksnis v. Gilligan* (S.D.N.Y. 1966), 256 F. Supp. 244, is a bizarre illustration of what could occur here. There the sentencing judge promised defendant and his counsel that the sentence to be imposed would not exceed 10 years. The charge was reduced from murder in the second degree to first degree manslaughter. A plea of guilty was entered. At sentencing time there was produced a record of a prior conviction of assault. The court found that the prior conviction was a felony, and imposed a sentence of 17½ to 35 years—contrary to the trial judge's promise that the maximum term would be 10 years.

Again in *Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495, we have another incident of the effect of a presentence report. The

defendant was indicted for promoting gambling in the first degree and possession of gambling records in the second degree in violation of New York law. An agreement between defendant's counsel and the assistant district attorney was entered into whereby the defendant was permitted to plead guilty to the lesser offense of possession of gambling records in the second degree. He did so, and the court accepted the plea and set a sentencing date. At sentencing time, another judge was presiding and there was another prosecutor who had replaced the one who had negotiated the plea. Contrary to his predecessor's agreement to make no recommendation as to sentence, the new prosecutor recommended the maximum one-year sentence. The court then read extensively from the presentence report:

> " 'Mr. Aronstein [Defense Counsel], I am not at all influenced by what the District Attorney says, so that there is no need to adjourn the sentence, and there is no need to have any testimony. It doesn't make a particle of difference what the District Attorney says he will do, or what he doesn't do.
>
> 'I have here, Mr. Aronstein, a probation report. I have here a history of a long, long serious criminal record. I have here a picture of the life history of this man . . .
>
> ' "He is unamenable to supervision in the community. He is a professional criminal." This is in quotes. "And a recidivist. Institutionalization—"; that means, in plain language, just putting him away, "is the only means of halting his anti-social activities," and protecting you, your family, me, my family, protecting society. "Institutionalization." Plain language, put him behind bars.
>
> 'Under the plea, I can only send him to the New York City Correctional Institution for men

for one year, which I am hereby doing.' " (404 U.S. 257, 259-60, 30 L. Ed. 2d, 427, 431-32, 92 S. Ct. 495, 498.

The United States Supreme Court vacated the judgment so entered.

See also *People v. Bennett* (1974), 16 Ill. App. 3d 972, where the trial court substantially modified the plea agreement entered into by the State's Attorney and the defendant's counsel.

Multiple are the reasons why there should be no judicial participation in negotiations preliminary to plea bargaining. This nowise impairs the duty of the court to make certain that the plea is a decision freely made and that no undue pressure has been exerted in obtaining the plea.

A potent argument against judicial participation in the pre-plea bargaining process is the possibility of the deprivation of the defendant's freedom of choice. The line between the promise of the shorter sentence on a plea of guilty and the threat of a longer sentence should the defendant be found guilty after trial is thin indeed.

Then there is the disparity in the bargaining position of judge and defendant. As the Gilligan court (*United States ex rel. Elksnis v. Gilligan* (S.D.N.Y. 1966), 256 F. Supp. 244, 254), stated:

"The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a

significantly longer sentence."

So also judicial impartiality may be impaired when the judge participates in the pre-plea bargaining negotiations and the case is tried before him after efforts on an agreed sentence have failed. He may well be left with the belief of the defendant's probable guilt. Any predilections of guilt that a judge might hold regarding a defendant must inevitably be reinforced by the knowledge that the defendant wishes to engage in plea bargaining discussions. *United States v. Werker* (2d Cir. 1976), 535 F.2d 198, 202.

More than that, however, the judge has become the adversary of the litigant in the pre-plea bargaining position—a situation in which no judge should ever place himself. So also the participating judge loses his neutral position so requisite to a judicial officer. His image, regardless of personal efforts, will be that of an advocate for the terms he embraces. Again, consider the position of the participating judge when he imposes sentence. The accused can well be justified in believing that the sentencing judge lacks objectivity and that the sentence imposed embraces the terms offered for a plea, but rejected.

The unhealthy conditions resulting from judicial participation in plea bargaining compose a long litany. Even longer is that list of claims which follow such judicial activity. It is my belief that the guidelines established by Rule 11 of the Federal Rules of Criminal Procedure should be adhered to in our courts.

Absent judicial participation in the pre-plea bargaining negotiations, there will not be the claims of broken promises and the quagmire resulting therefrom.