THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROGER SOLOMAN, Defendant-Appellant.

Fifth District    No. 81—588

Opinion filed July 7, 1983.

Randy Blue, of State Appellate Defender's Office, of Mt. Vernon, Robert E. Davison, of State Appellate Defender's Office, of Springfield, and Brian T. Otwll, law student, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Stephen E. Norris and Mary W. Richardson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Roger Soloman was convicted of burglary, theft and criminal damage to property after a jury trial in the circuit court of Jackson County. He was sentenced to terms of five years' imprisonment for burglary, three years for theft and 364 days for criminal damage to property, to be served concurrently. On the same date he was sentenced to consecutive terms for four other offenses to which he had previously entered pleas of guilty.

Defendant raises numerous issues on appeal. The principal issues concern the claim that the court improperly restricted his impeachment of the principal State witness, an accomplice, who was allowed to plead guilty to a reduced charge; the State's closing argument; and the imposition of consecutive sentences on the other charges to which he had pleaded guilty.

The instant proceeding grew out of the burglary of the Corner Tavern in Murphysboro. Two cases of Glen Fork whiskey, seven to nine cases of beer and a hand cart were taken from a storage shed behind the tavern. Officer Goforth of the Murphysboro Police first responded to a call about a disturbance in which a case of whiskey had been dropped in a residential yard, breaking some of the bottles. The officer then directed other police officers to the Corner Tavern where the burglary was discovered.

Before the burglary investigation could be completed, a call was received directing the officers to a trailer residence to render assistance because of a drug overdose. An ambulance was at the trailer; so were defendant and Robert Smith and a case of Glen Flork whiskey and six cases of Busch beer and the hand cart. These items were later determined to be the proceeds of the burglary of the Corner Tavern, after a search warrant was obtained and a search of the premises conducted.

The trailer was rented by Debbie Stowers, a friend of defendant and Smith and the victim of the drug overdose. Tommy Stowers, Debbie's brother, called the ambulance. He testified that just before it arrived, defendant and Smith brought the whiskey and beer into the

484

trailer.

Smith was jointly charged with Soloman, pleaded guilty to a reduced charge and testified for the prosecution. He testified in detail concerning the burglary and that it was committed by both of them acting in concert. He related how a case of whiskey was accidentally dropped off the hand cart at the residence and how they tried to hide the items at the trailer. The defense presented no evidence.

■■ Defendant first contends he was denied statutory and constitutional rights when no arrest warrant was issued by the trial court upon the filing of the information on July 2, as required, he argues, under section 111—2(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—2(d)). He argues that this resulted in the denial of a prompt preliminary hearing to determine probable cause. We again reject this contention as we did in *People v. Mitchell* (1983), 116 Ill. App. 3d 44.

Section 111—2(d) states that upon the filing of an information, the court shall immediately issue a warrant for the arrest of the person named in the information. Here, defendant was already under arrest and in custody, having been arrested on probable cause, which he has never contested. We do not believe that section 111—2(d) requires the issuance of a warrant where a defendant has been properly arrested and taken into custody. In any event, the failure to issue a warrant would not require the dismissal of charges as it would have no relationship to Soloman's actual complaint, that he was denied a prompt preliminary hearing.

Section 109—1 of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 109—1) requires that a person arrested without a warrant shall be taken before a judge and a charge shall be filed; this was done here. The judge shall inform the defendant of the charge against him and provide him with a copy of the charge; this was also done. The judge also informed the defendant of his right to counsel, appointed the public defender to represent him and fixed bond, all as required under the statute.

■■ Defendant's complaint is that a preliminary hearing was not held until seven weeks later; however, we see no relationship between the failure to issue an arrest warrant and the failure to hold a prompt preliminary hearing. Soloman has never claimed any prejudice resulting from the delay. See *People v. Dees* (1981), 85 Ill. 2d 233, 422 N.E.2d 616.

Defendant was arrested on July 2, and an information charging him with burglary and theft was filed the same day. His preliminary hearing was set three weeks later and was continued at the request of

counsel for his co-defendant, Smith, without objection on his part. See *People v. Hickman* (1973), 56 Ill. 2d 175, 179-80, 306 N.E.2d 32, 34-35.

The failure to hold a preliminary hearing for three or seven weeks, assuming this not to be "prompt," gives no rise to any remedy for failure to do so, as the courts of the State have repeatedly held. (See, *e.g., People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403; *People v. Meredith* (1980), 86 Ill. App. 3d 1136, 409 N.E.2d 70.) We need not again repeat the basis for so holding. Furthermore, in *Gerstein v. Pugh* (1975), 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854, while the supreme court held that the fourth amendment required a judicial determination of probable cause before a person arrested might be subjected to extended restraint, it further held that dismissal of charges or reversal of conviction was not the proper remedy for violation of the right. The person arrested may contest his continued detention in custody by the traditional writ of *habeas corpus*. We would note further that the first examination procedure followed here may well satisfy the fourth amendment requirement of *Gerstein*; although, it would not be the adversarial type of preliminary hearing contemplated under section 109 of the Illinois Code of Criminal Procedure of 1963.

■ Defendant's second assignment of error involves the alleged denial of defendant's offer of evidence to impeach the State's principal witness, Smith, by showing bias. The claimed bias was that Smith may have been motivated to testify falsely against Soloman in return for the State's dismissal of an additional offense for which he had been arrested, but not charged.

A recent arrest would not be admissible if the purpose were to impeach the witness' credibility by proof of the commission of a crime; only proof of conviction of a crime would be admissible for this purpose. (*People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835.) If, however, the purpose was to impeach by showing bias, or motive to testify falsely, a recent arrest might be admissible (*People v. Kellas* (1979), 72 Ill. App. 3d 445, 389 N.E.2d 1382), and the widest latitude is permitted the admission of such evidence on cross-examination. *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526.

■ Here, Smith's motive to testify falsely was thoroughly explored. On direct examination, Smith testified that he acted in concert with Soloman in committing the instant crime, that in return for his testimony he was allowed to plead guilty to a reduced charge and was sentenced to probation. His general credibility was impeached by evidence of prior convictions of two felonies.

When defense counsel proposed to ask Smith about his recent arrest, it was not made clear to the court the purpose counsel was at-

tempting to pursue, whether to attack Smith's general credibility or to show an additional motive to testify falsely. Defense counsel asked the court if he might inquire about bad acts; the court made it clear that he could ask the witness about his convictions for theft, whether a felony or misdemeanor. When counsel further inquired if he could question Smith about a recent arrest for theft, the court stated he could not as the witness was not convicted following the arrest. Later on, counsel explained that he was attempting to find out if the prosecution had "made another deal" with Smith. The court ruled that counsel could ask the witness about this, but he declined to follow the matter up in front of the jury. In fact, on redirect examination, the prosecution inquired about any further promise of leniency the prosecution may have made, and Smith stated that none had been made. See *People v. Snyder* (1979), 72 Ill. App. 3d 82, 390 N.E.2d 598.

This case does not present the factual situation present in *People v. Wilkerson* or *People v. Kellas*. In *Wilkerson*, the court refused to allow the defense to present any evidence of possible bias on the part of a key State witness to a shooting. The witness had felony charges pending, and the prosecutor admitted he had not decided what to do about these charges pending the trial of the subject case. In *Kellas*, the court likewise refused to allow the defense to make any inquiry into a pending felony charge.

Here, defense counsel had only seen Smith in the sheriff's office the previous night. It is not clear from the record why he was there. No offer of proof was made. It is clear that no additional charge of any kind has been filed against him. In *People v. O'Dell* (1980), 84 Ill. App. 3d 359, 369, 405 N.E.2d 809, 818, the State's principal witness was impeached both by his extensive prior criminal record and by showing a promise by the authorities to inform the parole board of his cooperation and the assurance of nonprosecution in the crimes about which he testified in favor of the State. Defense counsel then asked in an exploratory manner if the witness "had been given a pass" in return for his testimony in other cases. An objection to this questioning was sustained. In affirming the conviction, the court stated that it was improper to cross-examine about uncharged crimes and that the witness had already been examined about promises of leniency he had received in return for his testimony. The same reasoning applies here.

We find that the excluded nebulous evidence would at best have been merely cumulative. Its exclusion was, in any event, harmless beyond a reasonable doubt.

■◢■ Defendant next complains about improper prosecution closing argument. No objection was made to the argument, nor was it as-

signed as error in defendant's post-trial motion. The claimed error is accordingly waived. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Furthermore, we find that the argument that the burglary must have been a "two-man job" was not improper. Considering the number of items taken, the weight of the items and the distance from the tavern to trailer, it was proper for the prosecution to draw the inference that two persons committed the burglary. Defendant's complaint of other argument need not be addressed. The remarks were in response to argument made by defendant and were invited and could not be considered harmful in any event as they clearly did not contribute to the jury's verdict.

■ Defendant next complains that he was denied his constitutional right to effective assistance of counsel. Our careful examination of the record does not reveal that counsel was incompetent in the performance of his duties, or that anything he did resulted in such substantial prejudice to defendant that the outcome of the trial was probably affected under the standard set forth in *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.

■ Lastly, defendant argues that the court violated section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b)) in sentencing him to consecutive sentences. At the sentencing hearing at which the instant sentences were imposed, defendant was sentenced to one year on an unrelated theft charge and two concurrent five-year terms on unrelated burglary charges. He had pleaded guilty to these latter charges as well as a bail bond violation charge. The one-year sentence for theft was ordered to be served consecutive to the instant terms, and the concurrent five-year terms for the unrelated burglaries were imposed consecutive to all the other charges, except 18 months for bail bond violation which was to be served concurrently with all the other sentences. Section 5—8—4(b) provides:

> "The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b).

This section does not require that the court simply repeat on the record that it is of the opinion that consecutive sentences are required to protect the public; such a recital would be meaningless. What is required is that the record establish the justification for consecutive sen-

tences. Obviously, the court was of the opinion that consecutive sentences were required; otherwise, they would not have been imposed. *People v. Pittman* (1982), 93 Ill. 2d 169, 442 N.E.2d 836.

■ Defendant, although only 19 years of age, had an extensive juvenile and adult record. His juvenile record includes two adjudications of delinquency in two different counties. He was placed on probation for three months for retail theft in Jackson County. He had convictions for driving while his license was suspended and consumption of alcohol by a minor. He pleaded guilty to five other felony charges, burglary, theft and violation of bail bond for which he was sentenced to prison terms at the same time as the instant sentences were imposed. In addition, he had pending a charge of incest and a charge of reckless homicide. As in *Pittman*, the reasons set forth in the record show that the trial court was of the opinion that consecutive sentences were necessary to protect the public, and we are not authorized to substitute our judgment for that of the trial court. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Furthermore, the defendant never requested that the court explicate its reasoning. The right being personal, it may be waived. See *People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855.

■ Defendant further argues that it was improper to impose consecutive sentences on the residential burglary and theft charges as these offenses were committed as part of a single course of conduct. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(a); *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) These charges, however, are not the subject of the instant appeal. Defendant entered pleas of guilty and although properly admonished, never moved to withdraw his pleas of guilty or for a reduction or reconsideration of sentences. (87 Ill. 2d Rules 604(d), 605.) Whatever merit there may be to defendant's contention, the matter is simply not before us on this appeal. Nor are we permitted to recognize the matter as plain error under Supreme Court Rule 615(b)(2) (87 Ill. 2d R. 615(b)(2)) or under the authority of the holding in *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180, where all the offenses charged were considered properly before the court for consideration, as all were "dependent upon" the judgment from which the appeal was taken within the meaning of Supreme Court Rule 615(b)(2).

The judgment of the circuit court of Jackson County is affirmed.

Affirmed.

JONES and WELCH, JJ., concurring.